Margaret Lillian Ferguson v. Commissioner. Newton Ivan Sherry, Lois Sherry v. Commissioner.
Ferguson v. Commissioner
Docket Nos. 56085, 56086.
United States Tax Court
T.C. Memo 1958-32; 1958 Tax Ct. Memo LEXIS 200; 17 T.C.M. (CCH) 132; T.C.M. (RIA) 58032; February 26, 1958
*200 Charles H. Carr, Esq., Subway Terminal Building, Los Angeles, Calif., for the petitioners. Mark Townsend, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined the following deficiencies: Margaret Lillian Ferguson, Docket No. 56085
Additions
Year
Income Tax
for Fraud
1944
$ 5,817.27
$ 2,908.63
1945
5,124.55
3,117.15
1946
45,333.52
22,666.76
Newton Ivan Sherry and Lois Sherry,
Docket No. 56086
1945
$ 5,123.17
$ 3,118.79
1946
45,760.54
22,880.27
It was stipulated that no fraud is applicable to any of the years involved herein, and that the statute of limitations has expired for the year 1944. At issue is whether Newton Ivan Sherry and Margaret Lillian Ferguson were members of a partnership during the years 1945 and 1946. Findings of Fact Some of the facts were stipulated and are hereby incorporated as part of these findings. Petitioners Newton Ivan Sherry (hereinafter referred to as "Newton") and Margaret Lillian Ferguson (hereinafter referred to as "Margaret") are the children of Nathan Sherry (hereinafter referred to as "Nathan"). Nathan's first wife, the mother *201 of Newton and Margaret, died in 1937. In 1938 Nathan married Lucille Lawler Sherry (hereinafter referred to as "Lucille"). Nathan died in 1954. Petitioner Lois Sherry is the wife of Newton, and, aside from the fact that she filed joint returns with Newton, has no connection with the issue here involved. Petitioners' returns for the calendar years 1945 and 1946 were filed with the collector of internal revenue for the sixth district of California. Nathan, after discussions with his lawyer and his accountants, had his lawyer draft a partnership agreement dated October 1, 1943, which stated in part: 'WHEREAS, First Parties [Nathan and Lucille] were married on the first day of April, 1938 and ever since said date have been and now are husband and wife; and "Whereas, since said marriage First Parties have acquired and now own and hold the hereinafter described properties as community property; and "Whereas, First Parties acquired all of said properties by and through their joint and several personal services actually rendered since the date of said marriage; and "That said properties are described as follows: 50% interest of S & P Company valued at $30,000.00; 25% interest *202 of Hollywood Recreation Company valued at $25,000.00; 100% interest of Hollyway Cafe valued at $5,000.00; 50% interest of Monticello Cafe valued at $4,500.00; 33 1/3% interest of Pago Cafe valued at $3,000.00; 12 1/2% interest of Swing Club valued at $1,500.00; and "Whereas, Second Parties are the children of Nathan Sherry by a former marriage, and there are no children the issue of said marriage of First Parties, and "Whereas, First Parties desire to give and transfer to Second Parties one-half of their interest in the aforedescribed properties for the purpose of creating a partnership between and including all and every of parties hereto, "NOW, THEREFORE, BE IT KNOWN BY THESE PRESENTS: "That the parties hereto will become and remain partners for a term of one year if each and all of them shall so long live, and for and during such additional time as each and all shall so desire;" The S & P Company (hereinafter referred to as "S & P") owned and operated bars and restaurants. Paul Kalmanovitz owned the remaining 50 per cent interest in S & P. The partnership agreement, along with a letter requesting their signatures, was mailed to Newton, who was then on Guadalcanal *203 as a member of the United States Marines, and to Margaret who was then stationed in Ohio as a member of the United States Navy. They, in turn, signed the agreement and mailed it back to their father who was in Los Angeles. At the time they signed the agreement Newton was 23 and Margaret was 20. Nathan and Lucille filed gift tax returns dated March 15, 1944, for the year 1943 on which they each reported gifts of one-half the property transferred to the new firm. Margaret signed donee returns dated March 15, 1944, in connection therewith. Nathan signed donee returns as attorney in fact for Newton. The parties to the original agreement signed an amendment thereto dated July 1, 1944. This amendment stated that the firm's losses were to be borne in equal shares by the parties to the agreement. The amendment indicates that the firm was named Sherry Enterprises (hereinafter referred to as "Enterprises"). Newton was on active duty with the Marines from January 1940 until May 1945. He returned to the United States in March 1945, and was in a hospital in Philadelphia, Pennsylvania, from then until May 1945. Margaret was on active duty with the Navy from February 1943 until November 1945. *204 Throughout the period relevant to this proceeding Nathan possessed a power of attorney to act in behalf of Newton and Margaret. Partnership returns for Enterprises for fiscal years beginning July 1, 1944, and ending June 30, 1945, and beginning July 1, 1945, and ending June 30, 1946, dated September 13, 1945, and September 3, 1946, respectively, were signed by Nathan. Petitioners did not examine, sign or have anything to do with the preparation of these returns. Their preparation and filing were carried out under Nathan's direction. At Nathan's direction accountants prepared the individual returns of Newton and Margaret for the calendar years 1945 and 1946. These returns disclosed that Newton and Margaret each had $21,599.28 of income from Enterprises in 1945 and $19,156.85 in 1946. Petitioners signed their respective 1945 returns on March 13, 1946. The returns for 1946, signed by petitioners, were received in the office of the collector of internal revenue on March 15, 1947. Nathan saw to the preparation and filing of these returns and also arranged for the payment of the tax shown to be owing on the returns. Newton enrolled in college for the fall semester of 1945, but dropped *205 out before completion of the semester in order to work for S & P. This was done in response to directions from Nathan. Newton was employed by S & P as manager of a drive-in and bar known as the Bayview Club. His salary was $110 per week. This job ended sometime in 1946. At no time during this employment did Newton have anything to do with the keeping of the books and records of the Bayview Club. In 1946 Newton purchased a home for $8,599. The money for this purchase was given to him by his father. The house was sold later in that same year and the money was returned to Nathan. Newton always considered that the house belonged to Enterprises. Margaret attended college during the spring semester of 1946. In the fall of that year she worked as an office girl in a perfume business named Sherry Dunn. Margaret believed that this business was owned by Enterprises. At Nathan's request Margaret sometimes made deposits and withdrawals for him at various banks. At some of these banks the accounts were in the joint names of Margaret and Nathan. During the period in which Margaret lived in her father's home she drew on these accounts to meet their household expenses. Margaret was married in *206 March 1947 and ceased to live in her father's home. At the time of their mother's death and in the years following, Newton and Margaret were under the impression that their mother had left them $20,000 in the care of their father. It was their belief that Nathan used this money in his business, and that it was part of the capital of Enterprises. Sometime after their discharge from the Armed Forces Newton and Margaret each received approximately $500 as a result of the death of a grandparent. They turned this money over to Nathan to be used in Enterprises. In 1945 real property valued at approximately $52,500 was placed in Margaret's name. In 1946 real property valued at approximately $2,500 was also placed in her name. All of this property was placed in her name at Nathan's direction. Margaret did not consider herself the owner of this property. She thought it belonged to Enterprises. In 1947 Nathan transferred stock in the Marguery Corporation, which operates Lucy's restaurant, to Margaret. Nathan had purchased this business with funds from Enterprises. Margaret, at the time of the transfer from her father, considered herself the owner of the transferred shares. For a time *207 Margaret was president of the corporation; at the time of the trial she managed the restaurant and owned 20 per cent of the corporation's outstanding stock. Margaret is the record owner of a "fourplex" apartment house valued at approximately $14,000. Her rights in this property were transferred to her by her father. It was subject to an existing attorney's lien, and there is now an outstanding "assignment" of her rights in this property. Margaret is the owner of a "triplex" apartment house valued at approximately $35,000. This house belonged to Enterprises prior to its transfer to Margaret in 1950. Since the transfer of the "triplex" Margaret has made all the mortgage payments thereon. Newton and his wife signed a "Waiver of Restrictions on the Assessment and Collection of Deficiency in Tax" (Form 870) dated July 19, 1948 for the year 1945 for the amount of $1,114.42. The address under their signatures is 5444 Melrose Avenue, Los Angeles. Lucy's restaurant is located at that address. In a letter dated September 9, 1948, mailed to the Melrose Avenue address, respondent indicated that the deficiency was caused by an increase in Newton's distributive share of Enterprises' income. *208 On November 2, 1949, in the course of the Internal Revenue Service's investigation of Nathan's income, Newton testified under oath that he was then a partner in Enterprises. Margaret signed a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax" dated July 1948 for the year 1945 for the amount of $1,109.75. The address under Margaret's signature was 5444 Melrose Avenue, Los Angeles. In a letter dated September 9, 1948, mailed to the Melrose Avenue address, respondent indicated that the deficiency was caused by an increase in Margaret's distributive share of Enterprises' income. On May 15, 1950, in the course of the Internal Revenue Service's investigation of Nathan's income, Margaret testified under oath that she was then a partner in Enterprises. In 1947 S & P was dissolved. Neither Newton nor Margaret had any connection with the negotiations leading to a division of that company's property. One of the former S & P properties not taken by Paul Kalmanovitz upon dissolution of that company was the Clover Club and its underlying real property. This property was placed in a trust the beneficiaries of which were Newton and Margaret. The trustee of this trust *209 was an accountant employed by Nathan. The Clover Club was later destroyed by fire. Subsequently this property was sold. Nathan received the proceeds of the sale. The trustee did nothing to protect the interests of the beneficiaries. Nathan was in control of Enterprises; however, at various times he, his wife, Newton and Margaret held informal meetings at which Enterprises' business was discussed. The earliest that Paul Kalmanovitz heard of the existence of Enterprises was 1947. Newton and Margaret never asked to examine, or examined any of the books or records of Enterprises or of S & P. Nor did they ever request an accounting in connection with either of these firms. Respondent increased the income of Sherry Enterprises for the years relevant to petitioners' taxable years 1945 and 1946, and accordingly increased their distributive shares and their income taxes for those years. Petitioners Newton and Margaret were partners in Sherry Enterprises during the years in question. Opinion RAUM, Judge: This case presents the reverse of the usual family partnership controversy. Here, petitioners seek to disavow the existence of the partnership. The burden of proof is upon them, *210 and we cannot find on this record that it has been carried. The picture is far from clear on the evidence before us. It does appear that petitioners' [1] father had a number of business interests involving restaurants, bars, and taverns. These enterprises were operated by various organizations, the principal one being the S & P Company, a partnership in which the father had a 50 per cent interest. In October 1943 a document entitled "ARTICLES OF CO-PARTNERSHIP" was executed by petitioners, their father and stepmother. It identified various business interests, recited that they were held as community property by the father and stepmother who wished to give one-half of their interest to petitioners for the purpose of creating a partnership between all of the parties, and undertook to establish an equal partnership among them. A further agreement, dated July 1, 1944, amended the foregoing in certain particulars; it referred to the partnership as "Sherry Enterprises", and was signed by all four parties. Sherry Enterprises was not an operating company; it merely owned the interests in the various enterprises previously held by petitioners' father. *211 Petitioners emphasize the fact that neither of them rendered significant services to Sherry Enterprises, but this is not surprising since it was in the nature of a holding company. Moreover, each signed the original partnership agreement as well as the amendment thereto. Gift tax returns were filed. Each petitioner filed income tax returns reporting a share of distributable income of Sherry Enterprises. Each was questioned under oath by Government agents (Newton in 1949 and Margaret in 1950) during the course of an investigation of their father's affairs, and each swore that he or she was a partner. Also, in 1948, Newton signed a document authorizing the assessment and collection of $1,114.42 additional income taxes for 1945 based upon his distributive share of revised earnings of Sherry Enterprises, and Margaret signed a similar document authorizing the assessment and collection of $1,109.75 additional income taxes for 1945 based upon her distributive share of those revised earnings. We have reexamined petitioners' testimony in the light of the entire record and are not convinced that they have satisfactorily explained away the obvious conclusions to be drawn from these facts. Additionally, *212 notwithstanding some broad denials, we are far from satisfied that neither in fact received substantial distributions from Sherry Enterprises, directly or indirectly. We cannot conclude on the record before us that petitioners were not in fact bona fide partners in Sherry Enterprises during the years in question. It is doubtful whether, apart from the gifts, either of them contributed substantial amounts of capital to the partnership. To be sure, each at a later time did contribute $500 which had been inherited from a grandparent, and there is some suggestion than an amount of approximately $20,000, said to have been inherited from their mother, found its way into the partnership, but the evidence on this was too unsatisfactory for us to make any finding that such was in fact the case, although they believed that $20,000 had been left to them by their mother and invested in Sherry Enterprises. Perhaps, if the burden of proof were on the Government, we would hold in favor of petitioners. But the burden is not upon the Government; it is upon petitioners, and we cannot find from the evidence presented that they were not in fact partners in Sherry Enterprises during the tax years. Accordingly, *213 we have found as a fact that they were partners during the years in controversy. Cf. (C.A. 9), affirming (D. Ore.); (Ct. Cls.); . Decisions will be entered under Rule 50. Footnotes
1. For convenience, the word "petitioners" is used to refer to Margaret and Newton.↩